# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | | |
|---|---|---|
| **BETTY J. HEMP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:09CV34MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the applications of Plaintiff Betty J. Hemp for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed a brief in support of the Complaint. Doc.13. Defendant filed a brief in support of the Answer. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits on November 26, 2006, alleging a disability onset date of May 1, 2004. Tr. 83-85. Her application was denied and she requested a hearing before an administrative law judge ("ALJ"). Tr. 45-46, 49-53. After a hearing held on October 6, 2008, the ALJ found that Plaintiff was not disabled through the date of his decision, November 21, 2008. Tr. 5-18. On May 29, 2009, the Appeals Council denied Plaintiff's request for review. Tr. 1-3. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.

2007). In <u>Bland v. Bowen</u>, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

<u>See</u> <u>also</u> <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)); <u>Hartfield v. Barnhart</u>, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. <u>Cox</u>, 495 F.3d at 617; <u>Guillams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>McClees v. Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1994); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987). <u>See</u> <u>also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022. <u>See</u> <u>also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell</u>

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).  The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).  See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. <u>Goff,</u> 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In her Disability Report Plaintiff alleged that she was disabled due to bipolar disorder and Barrett's esophagus. Tr. 118. Plaintiff testified that, at the time of the hearing, she was fifty-two years old, was 5'5" tall, and weighed 226 pounds; that she last worked in 2006 at Fulton State Hospital as a security attendant; that she stopped working at Fulton State Hospital in order to open a bar; that the bar did not "pan out"; and that she previously worked as a self-employed hair dresser for twenty-five years.

The ALJ found that Plaintiff had reflux esophagitis, irritable bowel syndrome, a hiatal hernia, obesity, bipolar disorder, and anxiety disorder, not otherwise specified; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listed impairments in the Regulations; that Plaintiff had no exertional limitations; that her impairments precluded Plaintiff from high-stress jobs; that Plaintiff was able to perform her past relevant work as a hair stylist; that Plaintiff was able to perform work at all exertional levels, with the stated non-exertional limitation; that there was work in the economy, other than Plaintiff's past relevant work, which she could perform, including cleaner and packaging inspector; and that, therefore, Plaintiff was not disabled.

Plaintiff contends that the decision of the ALJ is not supported by substantial evidence because the ALJ gave improper weight to opinion of Plaintiff's treating sources, including Pascha Boyd, A.P.N.; that the ALJ formed his own opinion based on the medical evidence rather than relying

on the opinion of Plaintiff's treating source; and that the ALJ did not make a proper statement of the findings of Pat Finder, M.D..   Plaintiff also contends that the ALJ should have solicited further information to establish Plaintiff's RFC.

**A.      Plaintiff's credibility:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ.  Guillams V. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).   Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.   See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996).  In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts."  Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination."  Gregg

v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003).  See also Cox v. Barnhart, 471 F.3d 902, 907 (8th

Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support

of his credibility determination are based on substantial evidence.

First, the ALJ considered that, after Plaintiff was seen at the Arthur Center for treatment of

her mental impairment in April 2005, she did not seek such treatment again until May 2, 2008.  The

ALJ considered that this was a "significant gap" in Plaintiff's treatment; that Plaintiff's primary basis

for claiming she was disabled was her allegation of mental impairments; and that Plaintiff's lack of

regular treatment during this period was inconsistent with her allegations of disability and undermined

her credibility in this regard.  The ALJ also considered that there was no medical evidence that

Plaintiff required a prolonged hospitalization.  Tr. 15-16.  Indeed, Pat Finder, M.D., reported in

December 2006, that Plaintiff said that she had only one hospitalization for her mental impairments

and that this hospitalization lasted only one day.  Seeking limited medical treatment is inconsistent

with claims of disabling pain. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ

concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought

regular medical treatment.");  Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997)

("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments

contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny

benefits.");  Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870

F.2d 448, 450 (8th Cir. 1989).  In some circumstances, failure to seek medical treatment based on

inadequate financial resources may explain a plaintiff's failure.  See Johnson v. Bowen, 866 F.2d 274,

275 (8th Cir. 1989).  Indeed, Plaintiff reported in May 2008 that she could not afford to take her

medications.  Even assuming, however, that Plaintiff's financial resources were insufficient, failure

to seek treatment offered to indigents detracts from a claim that a plaintiff did not seek medical treatment because of inadequate financial resources. See Riggins, 177 F.3d at 693. The record does not reflect that Plaintiff sought and was denied such treatment. As such, the court finds that the ALJ properly considered Plaintiff's lack of medical treatment for her alleged mental condition and that the ALJ's decision in this regard is supported by substantial evidence.

Second, the ALJ considered that, in June 2008, Plaintiff stated that Celxa helped her mood and pain issues; that she did not feel as manic as before and was calm; that Trazodone was effective for sleep; and that Elavil was effective for her stomach impairments. The ALJ also considered that Plaintiff indicated that her bipolar disorder and anxiety were controlled when regularly medicated. Tr. 15-16. Dr. Finder reported that Plaintiff said that the medication she took for her mental impairments allowed her to do the things she needed to do, although they did not stop her feelings of panic, entirely. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling);Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. As such, the court finds that the ALJ properly considered that Plaintiff's alleged disabling conditions were controlled with medication and that his decision is supported by substantial evidence in this regard.

Third, the ALJ considered that Plaintiff said, in May 2008, that she helped her family deal with her grandson who had special needs and that she also cared for her disabled husband; that doing so can be "both physically and emotionally" demanding; and that these activities suggested that Plaintiff's capacities exceeded her alleged limitations. Tr. 15. The court notes that Plaintiff's husband

stated, in a Function Report Adult - Third Party, that Plaintiff watched television, used the computer, played games on the computer, took her mother to the doctor when she felt well enough, and "sometimes" did laundry. Plaintiff's husband also reported that Plaintiff could pay bills, count change, handle a savings account, and use a checkbook; that it hurt her stomach to lift over ten pounds; and that Plaintiff could "maybe [walk] a half block." Tr. 101-107. Plaintiff reported in December 2006 that she did "the heavy housework such as laundry and vacuuming as well as most of the yard work." Tr. 267. Additionally, Dr. Finder reported that Plaintiff was able to do "most of the things around her house, including laundry, yard work, vacuuming, and other things that need[ed] to be done." Tr. 271. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins, 177 F.3d at 692). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen, 75 F.3d at 439-31 (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ

properly considered Plaintiff's daily activities upon choosing to discredit her alleged limitations. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fourth, the ALJ considered that in May 2008 Plaintiff indicated that her family added stress to her existence; that her grandson was disabled; that she was helping her family deal with her grandson; and that her husband was on disability. Records of the Arthur Center, including those of April 2005, reflect that Plaintiff said that a number of her issues, including frustration and anger issues, had to do with her sexual relationship with her husband. Tr. 159. Also, it was reported on May 2, 2008, that Plaintiff had both "psychosocial and environmental stressors" which were "related to health, financial, and occupational" situations. Tr. 262. Situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). As such, the court finds that the ALJ properly considered that situational issues added stress to Plaintiff's situation and that the ALJ's decision in this regard is supported by substantial evidence.

Fifth, the ALJ considered that Plaintiff did not appear to be significantly limited at the hearing. The ALJ also considered that Plaintiff showed no evidence of pain or discomfort while testifying at the hearing; that the hearing was short-lived and cannot be considered a conclusive indicator of her overall pain level; and that Plaintiff's apparent lack of discomfort during the hearing could be given some weight regarding the credibility of her allegations. While an ALJ cannot accept or reject subjective complaints *solely* on the basis of personal observations, Ward v. Heckler, 786 F.2d 844, 847-48 (8th Cir. 1986), an ALJ's observations of a claimant's appearance and demeanor during the hearing is a consideration. Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (holding that an ALJ "is in the best position" to assess credibility because he is able to observe a claimant during his

testimony); Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) ("The ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997) ("When an individual's subjective complaints of pain are not fully supported by the medical evidence in the record, the ALJ may not, based solely on his personal observations, reject the complaints as incredible."). Here, to reach his conclusion, the ALJ combined his review of the record as a whole with his personal observations. As such, the court finds that the ALJ properly considered his personal observations and that his decision in this regard is supported by substantial evidence and consistent with the Regulations and case law.

Sixth, the ALJ considered that Plaintiff stopped working for reasons not related fully to her allegedly disabling impairments; that she testified that she stopped working as a hair stylist because she needed better health insurance; that records reflect that she stopped working to move closer to her daughter; and that these reasons do not directly correlate to Plaintiff's physical or mental impairments. Tr. 16. The court further notes that Plaintiff testified at the hearing that she stopped working at Fulton State Hospital to open a bar. Additionally, Plaintiff reported that she stopped working due to her husband's needing her medically. Tr. 119. Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). As such, the court finds that the ALJ properly considered the reasons why Plaintiff stopped working and that ALJ's decision in this regard is supported by substantial evidence.

Seventh, the ALJ considered inconsistencies in the record which detracted from Plaintiff's credibility. See Eichelberger, 390 F.3d at 590. In this regard, the court notes that Plaintiff stated in a Function Report - Adult that she did not take care of anyone else. Plaintiff testified, however, that

she took care of her mother who was living in a nursing home and that she helped her sister by taking their mother to the doctor's office. Tr. 26. Plaintiff's husband reported that Plaintiff babysat for short periods of time. Tr. 102. As stated above, Plaintiff also reported that, besides quitting work to start her own business, she quit work "due to her husband['s] needing [her] medically." Tr. 119. The court finds that the ALJ properly considered that there were inconsistencies in the record which detracted from Plaintiff's credibility and that his decision is supported by substantial evidence in this regard.

Eighth, the ALJ considered that Plaintiff was non-compliant with prescribed treatment and that she self-medicated. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain. In April 2005, Plaintiff discontinued psychiatric medications because she felt they caused her to have bad dreams. Tr. 159. In October 2006, Plaintiff did not pick up her acid reflux medication because she did not want to pay for it. Tr. 277. On July 31, 2008, it was reported that Plaintiff said that, among other things, she decreased her dosage of Celxa and increased her dosage of Trazodone. Tr. 258. It was also noted on this date that the doctor discussed with Plaintiff "the dangers of making all of these adjustments on her own. Patient understood that she was in the future to call as she [had] some history of self-adjusting on her own." Tr. 258. Also, it was reported on May 2, 2008, by Nurse Boyd, that Plaintiff "admit[ted] that at times she [too] her husband's pain pills, [and] her sister's pain pills"; that Plaintiff did not feel that she was abusing these medications, "even though some of her records from when she just recently went to the ER suggested they suspected she had a substance abuse issue"; that Plaintiff admitted "to taking many of her husband's medications at times to help manage [ ] things"; and that "at least one

or twice a week she estimate[d] that she [was] taking these types of things." Tr. 260. Additionally, Plaintiff was advised to stop smoking but records reflect that she continued to smoke. Tr. 166, 179, 193, 206, 230, 234, 236, 261, 286. As such, the court finds that the ALJ properly considered that Plaintiff failed to follow medical advice and that the ALJ's decision in this regard is supported by substantial evidence. In conclusion, the court finds that the ALJ properly considered Plaintiff's credibility and that his decision in this regard is supported by substantial evidence.

**B.      Plaintiff's Bipolar Disorder:**

Plaintiff contends that medical sources, including Nurse Boyd, concurred that she had bipolar disorder and that the ALJ did not properly consider these opinions. 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

Section 12.00(a) further lists mental disorders in diagnostic categories, which include, among others, mental disorders (§ 12.02), affective disorders (§ 12.04), mental retardation (§ 12.05), anxiety related disorders (§ 12.06), and personality disorders (§ 12.08).

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520

16

also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that

a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

Upon finding that Plaintiff did not suffer from a disabling mental condition as a result of alleged bipolar disorder the ALJ considered the medical evidence, as required by the first step of a mental impairment analysis, as well as Plaintiff's functional limitations. See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508. The court notes that on April 2, 2005, no psychological symptoms were noted when Plaintiff presented to the Boon Hospital Center. The ALJ considered that Plaintiff received her initial treatments for her mental impairments from the Arthur Center. Indeed, Plaintiff was seen at the Arthur Center by Nurse Boyd and by Z.A. Ajans, M.D. The ALJ considered that Plaintiff saw Nurse Boyd on April 6, 2005, and that Nurse Boyd reported, on this date, that Plaintiff said she felt lethargic and that she slept too much; that, upon examination, Plaintiff did not have any significant symptoms; that Plaintiff was alert, oriented, and cooperative; that she was "somewhat depressed and cognitively slow"; that Plaintiff denied suicidal or homicidal intent or psychosis; that her affect was varied; and that she was topic appropriate, had average intellect, and had fair-to-good insight and judgment.[1] Tr. 14. The ALJ further considered that Plaintiff presented twenty days later to Dr. Ajans and that it was reported on this date that Plaintiff had some anxiety and no significant depression; that Plaintiff was cooperative, that her mood was alert and anxious; that her affect was varied and appropriate to topic; and that Plaintiff's mental status was otherwise unremarkable.[2] Tr. 14, 159. The court notes the records of the Arthur Center, dated April 26, 2005, reflect that Plaintiff presented after discontinuing her medications. The court further notes

---

[1]    The records to which the ALJ refers as those of April 6, 2005, are dated March 29, 2005, and signed by Nurse Boyd and Dr. Ajans on April 6, 2005.

[2]    Records dated April 26, 2005, were signed by Nurse Boyd on April 28, 2005, and by Dr. Ajans on May 14, 2005,

that, on October 17, 2005, Plaintiff was discharged from care at the Arthur Center because she "stopped contact." The discharge summary from the Arthur Center states that Plaintiff made "some" progress. Tr. 156. When Plaintiff presented for abdominal pain on September 17, 2006, it was reported that she had been self-medicating with narcotics; that she was alert and oriented; and that she had normal mood and affect. Tr. 178-81.

The ALJ further considered that Plaintiff presented for a psychological consultation with Dr. Finder, on December 28, 2006, and that Dr. Finder reported that Plaintiff did not have a high school degree; that she was able to run her own business for twenty-five years; that she indicated that she closed her beauty shop so that she could move closer to her daughter; that Plaintiff said her mental impairment had resulted in one hospitalization in 2004 and that this hospitalization lasted only one day; that Plaintiff said she had stopped going to mental health treatment soon after she began; that Plaintiff diagnosed herself with bipolar disorder and reported having panic attacks; and that Plaintiff said that the medications she took allowed her to do things she needed to do, "though they did not stop panic feelings entirely." Tr. 14. The ALJ also considered that Dr. Finder reported that Plaintiff had neat dress and appearance; that Plaintiff said she had two-to-three week periods when she had racing thoughts and depression, and periods of this duration when she felt well; that Plaintiff said she did not have hallucinations or delusions; that Plaintiff appeared "relatively organized in conversation"; that Plaintiff had average intelligence, insight, and judgment; that she demonstrated good hygiene; that, given Plaintiff's level of functioning, it would be difficult for her to maintain employment; that Plaintiff had been diagnosed with bipolar disorder, posttraumatic stress disorder, and panic disorder with agoraphobia; and that Plaintiff had a Global Assessment of Functioning ("GAF") Score of 50 to 60. This score placed Plaintiff in the top of the serious level to the moderate

level of functioning.[3]  Further, as noted by the ALJ, a low GAF does not necessarily preclude all

types of work.  The court notes that Dr. Finder also reported that Plaintiff had been living "a

relatively stable life"; that stress caused her level of functioning to begin to deteriorate in 2004; that

Plaintiff self-medicated for her bi-polar symptoms; that this self-medication included marijuana; and

that Plaintiff "appear[ed] able to accomplish most of the things around her house."  Dr. Finder

concluded that "given [Plaintiff's] current level of functioning it would likely be a difficulty for her

to maintain public employment." Tr. 264-71.  Also, when Plaintiff presented for a sleep evaluation

in August 2007, it was reported that she was oriented and cooperative; that her attention,

concentration, and language function were normal; that she had a good fund of knowledge; that she

had appropriate mood and affect; and that her judgment was intact. Tr. 273.        T h e   A L J

considered that Plaintiff was seen at the Arthur Center by John Hall, M.D., on May 2, 2008,[4] and

that Dr. Hall reported that Plaintiff had historical bipolar-type elements, including impulsive and

excessive spending, mood swings, and irritability; that Plaintiff denied suicidal and  homicidal

ideation; and that Plaintiff admitted recent suicidal thoughts. Tr. 15.  The court notes that  Dr. Hall

also reported, on this date, that Plaintiff said she had low energy and poor concentration; that she

kept herself isolated; that Plaintiff had a GAF of 50; and that Plaintiff was advised not to"self-

---

[3]        Global assessment of functioning ("GAF") is the clinician's judgment of the
individual's overall level of functioning, not including impairments due to physical or environmental
limitations.  See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed.
1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores
of 31 to 40 represent "some impairment in reality testing or communication or major impairment in
several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50
represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild,"
and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

[4]        Records of this date were signed by Nurse Boyd on May 20, 2008, and by Dr. Hall
on May 29, 2008.   Nurse Boyd is listed as the "physician."

medicate and to not use illicit substances." Tr. 262.  The ALJ considered that Plaintiff was again

seen at the Arthur Center on June 3, 2008, on which date it was reported that a mental examination

indicated that Plaintiff had "significant overall improvement with her depression, irritability, and

anxiety"; that Plaintiff denied psychosis; that her intellectual functioning was average; that she had

fair-to-good insight and judgment; that her mental status was otherwise unremarkable; that Plaintiff

was diagnosed with bipolar disorder and anxiety disorder, not otherwise specified; and that Plaintiff

had a history of marijuana and prescription abuse. Tr. 15.  The court notes that records of June 3,

2008, also reflect that Plaintiff said that "for the most part" she felt that her level of anxiety and

irritability were "well managed." Tr. 256.  The ALJ considered that a July 31, 2008 mental status

examination, which was conducted by Nurse Boyd, indicated that Plaintiff was alert and cooperative;

that her mood had some mild elements of anxiety and irritability; that Plaintiff felt she was coping

effectively with these issues; that her insight and judgment were fair; and that she had average

intellectual functioning. Tr. 15.  Records from the Arthur Center dated July 31, 2008, also state that

Plaintiff said she felt "pretty good at this point"; that Plaintiff's diagnosis included bipolar disorder,

anxiety disorder not otherwise specified, "cannabis use by history," and "prescription pill abuse by

history"; and that Plaintiff was to return to the clinic in two months, or sooner if needed. Tr. 258-59.

The ALJ also considered Medical Assessment of Ability to Do Work-Related Activities (Mental)

completed by Nurse Boyd on September 18, 2008, as discussed, in detail, below.  The court finds

that the ALJ's determination that the medical evidence did not support Plaintiff's claim that she is

disabled due to a mental condition is supported by substantial evidence.

      Upon discrediting Plaintiff's allegation that she was disabled based on a mental disability, the

ALJ considered that the medical records did not reflect that any treating physician ever found or

imposed any long term, significant, and adverse mental limitations on Plaintiff.  A record which

contains no physician opinion of disability detracts from claimant's subjective complaints. See Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981). As discussed above, the ALJ considered that Plaintiff's only hospitalization for a mental impairment was brief. See Edwards, 314 F.3d at 967; Gwathney, 104 F.3d at 1045. As also discussed above, the ALJ considered that records reflect that Plaintiff's bipolar disorder and anxiety were controlled when regularly medicated. See Schultz, 479 F.3d at 983; Estes, 275 F.3d at 725; Murphy, 953 F.2d at 384; Warford, 875 F.2d at 673.

Consistent with the requirement of § 404.1520(a), after considering the medical evidence, the ALJ proceeded to consider Plaintiff's functional limitations and concluded that Plaintiff had no more than mild limitations of daily living, based primarily on Dr. Finder's December 28, 2006 report. Tr. 11. In the area of social functioning the ALJ considered that Plaintiff had only mild difficulties based on, among other things, that the record did not reflect that while she worked as a hair stylist she had difficulty interacting with the public; that the record did not reflect that Plaintiff quit working as a stylist because of her inability to interact socially; because the record reflected that she stopped working as a stylist because she sought better health insurance; and because the ALJ observed Plaintiff interact well with her attorney at the hearing. Tr. 11. The court notes that Plaintiff told Dr. Finder that she had always been able to get along with her customers and other people with whom she worked when she was self-employed and that, when she worked at Fulton State Hospital, she had a difficult time getting along with social workers and got along well with nurses and physicians. Tr. 266. In regard to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties based on, among other things, that Plaintiff was able to work for a number of years without any documentation of limitations in these areas; that medical records reflected that Plaintiff was consistently in the average range of intellectual functioning; and that medical records reflected

that she consistently had average insight and judgment; and that she was able to proceed at the hearing without obvious difficulties. Tr. 11. The ALJ noted that Plaintiff had no documented episodes of decompensation. As required by the Regulations, the ALJ considered the rating of the degree of Plaintiff's functional limitations and compared them to the mental disorders in the Listings of Impairments. See 20 C.F.R. § 404.1520a(d)(2)-(3). The ALJ then incorporated his finding in regard to Plaintiff's alleged mental impairment into his RFC determination and found that Plaintiff was precluded from high-stress work. See Lauer, 245 F.3d at 704. Further, as discussed above, in addition to considering all of the medical evidence, the ALJ considered Plaintiff's credibility and her testimony prior to determining her RFC. See Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'") (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). The ALJ found, in regard to Plaintiff's RFC, that she had no exertional limitations and that she was precluded from high-stress work. The court finds that the ALJ's decision, in regard to Plaintiff's RFC, is supported by substantial evidence.

To the extent that the ALJ did not specifically address, in regard to Plaintiff's alleged mental impairment, every consideration mentioned in the Regulations, the relevant consideration is whether the record is supported by substantial evidence. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion."). The court finds that the ALJ's decision in regard to Plaintiff's mental impairments is supported by substantial evidence and that it is consistent with the case law and regulations. The court further finds that the ALJ's determination that Plaintiff had no

exertional limitations and that she is precluded from high-stress work is supported by substantial evidence.

### C. Weight Given to Medical Opinion of Nurse Boyd, Dr. Finder, and Plaintiff's Treating Doctors:

Plaintiff contends that the ALJ should have given controlling weight to the opinions of Nurse Boyd, Dr. Finder, and other treating sources, including Dr. Ajans and Dr. Camp. In particular, Plaintiff contends that the ALJ should have found her disabled because all of these sources reported that she has bipolar disorder. Doc. 13 at 15. As discussed above, the ALJ was not required to find Plaintiff disabled merely because she has a mental condition. See Dunlap, 649 F.2d at 638. To the extent Plaintiff contends that the ALJ formed his own opinion based on the medical evidence, rather than rely on the opinion of a treating source, the court finds that Plaintiff is misguided. The ALJ did, in fact, consider the medical evidence in great detail, as discussed above. Consistent with the Regulations and case law, the ALJ reached his conclusions only after reviewing the medical evidence and the record as a whole. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians."). Only after considering the medical evidence of record as well as Plaintiff's testimony and credibility did the ALJ finding that Plaintiff had no exertional limitations and that she was limited to low stress jobs. The court finds that the ALJ's determination of Plaintiff's limitations is supported by substantial evidence on the record.

#### 1. Opinion of Nurse Boyd:

Plaintiff contends that the ALJ erred in not giving controlling weight to the opinion of Nurse Boyd as stated in her September 18, 2008 Assessment and in her letter of October 13, 2008. Tr. 287-88, 290. In a Medical Assessment of Ability to Do Work-Related Activities (Mental), completed on September 18, 2008, Nurse Boyd reported that Plaintiff had significant limitations in

regard to dealing with the public, work-related stress, functioning independently, using judgment, and attention and concentration.[5] Indeed, Nurse Boyd reported in this Assessment that Plaintiff's abilities in regard to relating to co-workers, dealing with the public, using judgment, interacting with supervisors, understanding, remembering, and carrying out complex instructions were *good to poor or none*; that Plaintiff's abilities were *fair to poor or none* in regard to dealing with work stresses, maintaining attention, behaving in an emotionally stable manner, relating predicably in social situations, and demonstrating reality; and that her abilities were *good to fair* in regard to following work rules, functioning independently, understanding, remembering, and carrying out simple job instructions, and maintaining personal appearance. Tr. 287. Nurse Boyd also wrote a letter, dated October 13, 2008, in which she stated that Plaintiff was unable to sustain employment due to her bipolar disorder and anxiety. Nurse Boyd further stated in this letter that Plaintiff had a history of agitation and poor impulse control that affected her ability to get along with peers and supervisors; that Plaintiff's efforts to self-medicate intensified her issues; that her illness should stand independent of substance abuse; that Plaintiff had not reached a point of consistent remission and mood stability; that her bipolar illness was unpredictable; and that compliance decreased the chance of Plaintiff's decompensation. Nurse Boyd asked that Plaintiff's claim for long term disability be approved. Tr. 290.

First, the ALJ was not required to afford Nurse Boyd's opinion controlling weight because she is not a physician. Indeed, the opinions of treating sources are generally given controlling weight. However, only acceptable medical sources can be considered treating sources. Lacroix v. Barnhart, 465 F.3d 881 (8th Cir. 2006) (citing SSR 06-03p, (Aug. 9, 2006) ("[O]nly 'acceptable medical

---

[5] The ALJ discredited Nurse Boyd's September 2008 statements, as discussed more fully below in the court's discussion of the weight given by the ALJ to Nurse Boyd's opinion.

sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). "Similarly, 'medical opinions' are defined as 'statements from physicians and psychologists or other acceptable medical sources.'" Id. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2), SSR 06-03p). Nurses are not physicians, psychologists, or other acceptable medical sources as defined by the Regulations. See id. (citing 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005)). On the other hand, under some circumstances the opinion of a treating nurse may be entitled to greater weight than that of a non-treating consultant. Id. (citing Shontos v. Barnhart, 328 F.3d 418, 426-27 (8th Cir. 2003)); SSR 06-03p, 71 Fed. Reg. at 45,596) (stating that more weight may be given to the opinion of a medical source who is not an acceptable medical source if "he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."). A nurse may be considered another medical source to assist the ALJ in determining the severity of a claimant's impairment. See 20 C.F.R. §§ 404.1513(d), 416.913(d). Consistent with the Regulations, the ALJ in the matter under consideration did not give Nurse Boyd's opinion controlling weight. Rather, the ALJ considered her opinion in determining the severity of Plaintiff's impairments. See Raney, 396 F.3d at 1010 ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.").

Second, the court notes that Plaintiff last met the insured status on June 30, 2006. For entitlement to disability insurance benefits under Title II of the Act, Plaintiff has burden of showing that she was disabled as defined by the Act prior to the expiration of her insured status. See Pyland v. Apfel, 149 F.3d 873, 876-77 (8th Cir. 1998). See also 20 C.F.R. § 404.130; Long, 108 F.3d at

187; <u>Mapes v. Chater</u>, 82 F.3d 259, 261 n.2 (8th Cir. 1996). Thus, Nurse Boyd's opinion as stated in 2008 does not establish that Plaintiff was disabled as of June 30, 2006 nor does it relate to Plaintiff's RFC from May 2004 through June 2006.

Third, upon discrediting her opinion, the ALJ noted that Nurse Boyd's opinion was inconsistent with the opinions of other medical providers. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians."<u>Estes</u>, 275 F.3d at 725. An ALJ may "discount or even disregard the opinion of a treating [source] where other medical assessments are supported by better or more thorough medical evidence, or where a treating [source] renders inconsistent opinions that undermine the credibility of such opinions." <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1013 (8th Cir. 2000). <u>See</u> <u>also</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

Fourth, upon discrediting Nurse Boyd's opinion, the ALJ considered that Nurse Boyd's conclusions were inconsistent with her own reported observations during 2005. Indeed, Nurse Boyd repeatedly reported that Plaintiff was alert, oriented, and cooperative, with appropriate affect, and average intellectual functioning. She also reported that Plaintiff was doing better with treatment and medication. Where a treating source's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment. <u>See</u> <u>Hacker v. Barnhart</u>, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); <u>Chamberlain</u>, 47 F.3d at 1494; <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 (8th Cir. 1991)).

Fifth, as discussed above, the ALJ considered that the Plaintiff did not appear to be as significantly limited at the hearing as she was described by Nurse Boyd.

Sixth, although Nurse Boyd wrote that Plaintiff is unable to work, an opinion regarding a claimant's limitations should not be given controlling weight where these limitations were never mentioned in numerous treatment records or supported by any explanation. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007). As discussed above, Nurse Boyd's opinion regarding Plaintiff's limitations is contracted by Nurse Boyd's own notes and records of other providers.

Seventh, to the extent Nurse Boyd opined that Plaintiff is disabled within the meaning of the Act, the determination that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating source stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature.").

Eighth, the ALJ has identified good reason for not accepting Nurse Boyd's opinion. As such, the ALJ was not bound by Nurse Boyd's conclusory statements of total disability. See SSR 96-2p; 20 C.F.R. §§ 404.1527 and 416.927; King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

Ninth, the ALJ considered the record as a whole. When considering the weight to be given the opinion of a treating source, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole.").

Tenth, the court notes that the record does not reflect that Nurse Boyd administered tests to Plaintiff to support her conclusions. Moreover, Nurse Boyd's opinion is largely based on Plaintiff's subjective complaints. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

The court finds that the ALJ gave proper weight to Nurse Boyd's opinion and that the ALJ's decision in this regard is supported by substantial evidence.

### 2. Opinion of Dr. Finder:

The court has set forth, above, Dr. Finder's findings in his December 28, 2006 report. Plaintiff contends that the ALJ erred in failing to give controlling weight to Dr. Finder's opinion that it would be difficult for Plaintiff to maintain public employment. First, Dr. Finder was not a treating doctor; rather, he was an examining doctor who saw Plaintiff only once. As such, his opinion should not be afforded controlling weight. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) (holding that the opinion of one time consulting physician is not substantial evidence).

Second, Dr. Finder's opinion was based primarily on Plaintiff's subjective complaints. See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (holding that physician's opinion not entitled to weight if based solely on the claimant's subjective complaints). Significantly, Dr. Finder's report repeatedly states that he was reporting what Plaintiff told him. Although Dr. Finder's report reflects that he conducted a "mental status exam," his report, in this regard, merely recites Plaintiff's responses to questions, including a description of her symptoms. Tr. 268-69. Only one paragraph of Dr. Finder's report, which is nine pages long, is devoted to objective questions designed to determine Plaintiff's limitations. Tr. 269. In regard to these questions, Dr. Finder reported that

Plaintiff "struggled to give the date, even after signing a number of papers which required the date at the beginning of the session"; that "[s]he was given some simple consumer math problems and had no difficulty with these"; that she "was asked some items off the Comprehension Subtest of WAIS-III in order to gage common sense thinking and knowledge of society and had no difficulties with this"; and she "was asked to interpret some old saying in order to gauge abstract thinking and gave minimally acceptable answers to these." Tr. 269. As such, Dr. Finder's statement that Plaintiff would be unable to maintain employment is inconsistent with results of testing which he administered and inconsistent with his own findings. See Hacker, 459 F.3d at 937; Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d at 1023.

Third, the ALJ did not totally discount Dr. Finder's opinion but rather considered it as part of the record as a whole. In particular, the ALJ considered Dr. Finder's observations. As noted by the ALJ, Dr. Finder reported that Plaintiff's GAF was 50 to 60, which scores are consistent with moderate symptoms. See Hogan 239 F.3d at 961 (holding that an ALJ is obligated to evaluate the record as a whole when considering a medical opinion).

Fourth, to the extent Dr. Finder opined that Plaintiff is disabled and cannot work, as stated above, the determination that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis, 392 F.3d at 994. As such, the court finds that the ALJ gave proper weight to the opinion of Dr. Finder and that his decision in this regard is supported by substantial evidence. Additionally, the court finds that the ALJ gave proper weight to all of the medical opinions and records and that his decision, in this regard, is supported by substantial evidence.

**D.      Sufficiency of the Record:**

Although Plaintiff contends that the ALJ should have solicited further information regarding her RFC, Plaintiff had the burden to establish her RFC. Eichelberger, 390 F.3d at 591. Indeed, an ALJ does have a duty to fully and fairly develop the evidence. Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) ("Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case") (citing Nevland, 204 F.3d at 858; Landess v. Weinberger, 490 F.2d 1187, 1188 (8th Cir.1974)); Brown v. Heckler, 827 F.2d 311, 312 (8th Cir. 1987); Brissette v. Heckler, 730 F.2d 548, 549 (8th Cir. 1984), Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). This duty extends to the ALJ even where a claimant is represented by counsel. Id. (citing Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983)). Specifically, "[w]hen a claimant's medical records do not supply enough information to make an informed decision, the ALJ must fulfill this duty by ordering a consultative examination." Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992); Dosier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985) (holding that "it is reversible error for an ALJ not to order a consultative exam when such an evaluation is necessary to make an informed decision"). See also 20 C.F.R. § 416.917. Under the regulation governing consultative medical evaluations, a referral is necessary if the evidence of the record is insufficient to make a determination. See 20 C.F.R. §§ 404.1517 through 404.1519a. The issue, therefore, is whether there was sufficient evidence before the ALJ to permit him to make a determination with respect to Plaintiff's ability to engage in substantial gainful employment. The court has found above that the ALJ's determination that Plaintiff had no exertional limitations and that she was limited to low stress jobs is supported by substantial evidence. The court finds, therefore, that the evidence before the ALJ was sufficient for him to make a determination regarding Plaintiff's ability to engage in substantial gainful employment. As such, the ALJ was not required to solicit further information regarding Plaintiff's RFC.

## E.    Plaintiff's Past Relevant Work:

The ALJ found that Plaintiff's RFC does not preclude her from performing her past relevant work[6] as a hair stylist either how it is generally performed or how Plaintiff performed it and that, therefore, she was not disabled.  The ALJ found, in the alternative, based on the testimony of a VE, that there are other jobs, available in significant number in the economy, which Plaintiff can perform. While the court finds that the ALJ's decision that Plaintiff cannot perform her past relevant work is not supported by substantial evidence because the record does not adequately establish how she performed this job or how this job is generally performed,[7] the court finds that the ALJ's decision that there is other work in the economy which Plaintiff can perform is based on substantial evidence. In this regard, the court has found that the RFC which the ALJ assigned to Plaintiff is supported by substantial evidence.  The ALJ posed a hypothetical to the VE which included all of Plaintiff's limitations which the ALJ found credible.[8] See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999)

---

[6]    The Social Security regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). If the claimant is found to be able to perform the duties of his [or her] past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).

[7]    SSR 82-62, provides that an ALJ has an obligation to "'fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work.'"Groeper v. Sullivan, 932 F.2d 1234, 1238 (8th Cir. 1991)(quoting Nimick v. Sec'y of Health and Human Servs., 887 F.2d 864, 866 (8th Cir.1989). Where the record contains substantial evidence that claimant can perform past work, the ALJ's failure to develop past work record in full detail does not require remand. See Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir.1990)

[8]    The VE assumed that Plaintiff had bipolar disorder and that, with medication and therapy, could follow instructions in a low stress environment; that she could perform light/medium/ sedentary work; and that she could work in an environment without a lot of social interaction. Tr. 39.

("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). The VE testified that there is work available in the economy which a person with Plaintiff's RFC can perform and that these jobs include cleaner, packager, inspector, and assembler. Tr. 39. Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990). As such, the court finds that the ALJ's decision that there is work available in the economy which Plaintiff can perform is based on substantial evidence. The court finds, therefore, that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED;** Docs. 1, 13.

**IT IS FINALLY ORDERED** that a separate judgement be entered in the instant cause of action.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of June, 2010.